IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **LEN CLINE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**ROYAL NEIGHBORS OF AMERICA**, an Illinois Corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Len Cline ("Plaintiff Cline" or "Cline") brings this Class Action Complaint and Demand for Jury Trial against Defendant Royal Neighbors of America ("Defendant" or "Royal Neighbors") to stop Royal Neighbors from directing its agents to violate the Telephone Consumer Protection Act by making unsolicited telemarketing calls to consumers *without their consent*, including calls to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Royal Neighbors' conduct. Plaintiff Cline, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Len Cline is a resident of Satsuma, Florida.

2. Defendant Royal Neighbors is an Illinois company headquartered in Rock Island, Illinois. Defendant conducts business throughout this District, the State of Florida, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District, and the wrongful conduct giving rise to this case arose from that business and was directed to Plaintiff while he was residing in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using … an artificial or pre-recorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

7. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, pre-recorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

8. While "prior express consent" is required for all pre-recorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver pre-recorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

2

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

9. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

10. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14. According to online robocall tracking service "YouMail," 3.3 billion robocalls were placed in June 2020 alone, at a rate of 111.2 million per day. www.robocallindex.com (last visited July 28, 2020).

15. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

17. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

3

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

18. Royal Neighbors sells life insurance packages to consumers.[3]

19. In order to generate leads for its agents, Royal Neighbors contracts with third-party telemarketing companies who place telemarketing calls to consumers.

20. The Federal Communication Commission has instructed that corporations such as Royal Neighbors may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activties to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

21. Unfortunately, consumers are receiving multiple unsolicited, unlawful telemarketing calls on behalf of Royal Neighbors despite having registered their phone numbers on the DNC.

22. To make matters worse, consumers are receiving these unlawful calls even after they have instructed agents to stop calling them, as per Plaintiff's experience.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/royal-neighbors-of-america/about/

4

23. There are numerous complaints posted online about the same kind of unsolicited insurance calls that Plaintiff Cline received including:

- "Have opted out in the past but still get calls."[4]
- "Medicare Options CRAP Insurance"[5]
- Phone calls from this number ever single day at least 10 times a day. It's driving me crazy and it should not be allowed. Sometimes there is only a period of a few minutes between calls."[6]
- "No reply when answered."[7]
- "Terrrible, always call at least 3 times a day but, did not speak! did not hang up the phone!!!!"[8]
- "unwanted scam calls"[9]
- "Getting calls from this number but when I answer, the caller hangs up. I have been getting several calls a week regarding medicare from several other numbers."[10]
- "Harassing daily phone calls. Something to do with insurance. Have them NO and asked to be removed from their list but the calls keep coming from exact same woman. Blocked the number now."[11]

24. Upon information and belief, Royal Neighbors purchases leads from third-party lead generators such as the one that identifies itself as "Senior Solutions" who contacted Plaintiff unlawfully.

25. Royal Neighbors benefits financially from the leads it purchases from third-party lead generators.

26. In response to these calls, Plaintiff Cline files this lawsuit seeking injunctive relief requiring Defendant to cease from violating the Telephone Consumer Protection Act by, among other things placing unsolicited calls to consumers' residential telephone numbers when those

---

[4] https://www.everycaller.com/phone-number/1-510-241-3738/
[5] *Id.*
[6] https://www.everycaller.com/phone-number/1-256-203-1053/
[7] https://www.everycaller.com/phone-number/1-727-577-4757/
[8] https://800notes.com/Phone.aspx/1-662-546-1309
[9] *Id.*
[10] *Id.*
[11] https://800notes.com/Phone.aspx/1-440-201-7616

5

numbers are registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF CLINE'S ALLEGATIONS

27. Plaintiff Cline registered his cell phone on the DNC on December 22, 2011.

28. Plaintiff Cline's cell phone is not associated with a business and is used for personal use only.

29. In May of 2020, Plaintiff started receiving unsolicited insurance phone calls to his cell phone.

30. Plaintiff told the agents that he was not interested and specifically asked for the calls to stop. This occurred several times in the month of May, 2020.

31. Despite his requests for the calls to stop, the calls continued

32. On May 31, 2020 at 11:20 AM, Plaintiff received an unsolicited autodialed call to his cell phone from an agent who called on behalf of Defendant using phone number 301-992-7594.

33. When the agent started asking qualifying questions to the Plaintiff about what kind of insurance he might need, Plaintiff asked for the calls to stop as he is not interested in purchasing insurance.

34. On June 1, 2020 at 4:44 PM, Plaintiff received another unsolicited call to his cell phone from an agent on behalf of Defendant, this time using phone number 386-589-6791.

35. Frustrated at receiving the unsolicited calls, Plaintiff attempted to identify the telemarketer. This time, Plaintiff allowed the agent to ask him a series of qualifying questions in order to determine who was calling him.

36. Once Plaintiff answered the questions in an attempt to discover the identity of the telemarketer calling him, he was forwarded to "Jackie Smith Dobbins" with Royal Neighbors of America.

6

37. Plaintiff played along as if he was interested in getting insurance so the agent would email him an insurance quote, thereby confirming the identity of the telemarketer that was calling him.

38. The agent Jackie Smith Dobbins sent Plaintiff an email with an application attached to it that clearly shows that the telemarketing calls were on behalf of Royal Neighbors of America and that it was sent by an agent associated with MyLifeAdvisers.com.



39. The agent Jackie Smith Dobbins called Plaintiff back using phone number 330-760-3793 on June 2, 2020 to ensure that the application would be filled out.

40. Plaintiff told the agent that he wanted the real name and address of the company that had been calling him and who eventually forwarded him to her.

41. The agent Jakie Smith Dobbins told Plaintiff Cline that the calls he received were from Senior Solutions. She did not disclose any further information about Senior Solutions.

42. Plaintiff asked the agent if he could speak to a supervisor to find out more about Senior Solutions. She said that a supervisor would give Plaintiff Cline a call, but he did not receive any calls from a supervisor or manager at Royal Neighbors of America.

43. The unauthorized solicitation telephone calls that Plaintiff received from, or on behalf of Royal Neighbors, as alleged herein, have harmed Plaintiff Cline in the form of

7

annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his cell phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phones. The calls also wasted Plaintiff's time, as he had to spend time trying to determine which company was responsible for the calls he was receiving.

44. Seeking redress for these injuries, Plaintiff Cline, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits telemarketing calls to cellular telephones and numbers registered on the National Do Not Call Registry.

## CLASS ALLEGATIONS

45. Plaintiff Cline brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff, and (5) for whom Defendant claims (a) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call Plaintiff, or (b) it did not obtain prior express written consent.

> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) called more than one time (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff (4) after the person asked for the calls to stop.

46. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

8

and/or released. Plaintiff Cline anticipates the need to amend the Class definitions following appropriate discovery.

47. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

48. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Cline and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendant, or an agent working on behalf of Defendant systematically made multiple calls to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to make the calls;

   (c) whether Defendant's calls to Plaintiff and other consumers were made for telemarketing purposes;

   (d) whether Defendant or its agents engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

   (e) whether Defendant's conduct constitutes a violation of the TCPA;

   (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

49. **Adequate Representation**: Plaintiff Cline will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in class actions. Plaintiff Cline has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Cline and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Cline nor his counsel have any interest adverse to the Classes.

50. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a

whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Cline. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

51. Plaintiff Cline repeats and realleges paragraphs 1 through 50 of this Complaint and incorporates them by reference.

52. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

53. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

54. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call

10

Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

55.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

56.     As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

57.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Registry Class)**

58.     Plaintiff Cline repeats and realleges paragraphs 1 through 50 of this Complaint and incorporates them by reference.

59.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the

subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

60. Defendant or its agent made marketing calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls.

61. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cline individually and on behalf of the Classes, prays for the following relief:

63. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Cline as the representative of the Classes; and appointing his attorneys as Class Counsel;

64. An award of actual and/or statutory damages and costs;

65. An order declaring that Defendant's actions, as set out above, violate the TCPA;

66. An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

67. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Cline requests a jury trial.

DATED this 10th day of November, 2020.

*/s/ Avi R. Kaufman*
Avi R. Kaufman
Florida State Bar # 84382
Kaufman P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
Email: kaufman@kaufmanpa.com

*Trial Counsel for Plaintiff*

Stefan Coleman
Florida State Bar # 30188

13

Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Email: Law@StefanColeman.com

*Counsel for Plaintiff*

14